## Case No. 14,662.

### UNITED STATES v. BROWN.

[Deady, 566.] [1]

District Court, D. Oregon.    March 18, 1869.

STATUTES—POLICY OF—INTERNAL REVENUE—EVIDENCE—PRESUMPTIONS—WITNESS—INTEREST.

1. With the policy or impolicy of an act of congress, courts and juries have nothing to do.

2. An action for a penalty for the violation of the internal revenue act (14 Stat. 144) is a civil action, and the jury are to find according to the preponderance of the evidence.

[Cited in U. S. v. Shapleigh, 54 Fed. 133.]

3. In considering the evidence, a jury is bound to act deliberately and according to the dictates of reason and the teachings of experience.

4. The law presumes, and, until the contrary appears, juries are bound by such presumption, that a witness speaks the truth.

5. A box of sardines being sold unstamped, the presumption is that it never was stamped, but such presumption may be overcome by showing that the stamp had been lost or removed by accident, or the like.

6. A jury is not formed to reflect by its verdict the state of public opinion touching the questions involved in the case on trial.

7. Interest of a witness in the result of the action to be considered by the jury.

This was an action brought upon the information of Leander Quivey and I. G. Cul-

1 [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

pepper, against the defendant [Samuel Brown], to recover penalties to the amount of $750, for selling nine sealed boxes of sardines and six bottles of hair oil, without the same being duly stamped. On the trial, the witnesses for the government—Quivey and Culpepper—testified positively that they bought the above mentioned articles, at the store of the defendant, at Dayton, in Yamhill county, on July 2, 1868, of Columbus Brown, the son and clerk of the defendant, and that the same were not stamped when purchased. The sardines were produced on the trial, and the boxes bore the appearance of having once been stamped about the middle of the long edge, and that the stamps had afterwards come off. For the defendant, Columbus Brown testified that he sold the articles in question to Quivey and Culpepper, at the time and place they stated, but that to the best of his recollection and belief they were duly stamped at the time. He also testified that all the sardines in the store at the time of the sale were purchased of Sneath, in Portland, and that they were stamped when put upon the shelves. That bottles of hair oil were purchased of Hodge & Calef, between three and four years ago. That he believed they were stamped, because never got any goods of H. & C. that needed stamping. That he was in the habit of examining goods once a month with Assistant Assessor Porter, to see if duly stamped. That he believed articles sold to Q. and C. duly stamped, but not positive of it. T. J. Robertson, a saloon keeper, testified that he was an intimate friend of Culpepper's, and that about the first of February last, Culpepper came into his saloon on Morrison street, and plucked him one side, and told him that he had been up the country buying sardines, and when they got any with stamps on they tore them off, and that he had the dead wood on a big thing; and that Culpepper then tapped him on the side of the nose with his finger, remarking at the time to witness: "If you reveal this, or blow on me, you know your doom." Culpepper denied positively having ever told Robertson that they took the stamps from goods in any way, or that they ever did take the stamps off any articles purchased by them. There were a large number of other actions brought upon the same information and tried at the same term, in all of which the following charge was substantially delivered to the jury.

John C. Cartwright, for plaintiff.

David Logan and W. W. Page, for defendant.

DEADY, District Judge (charging jury). In this case the United States complains, for that the defendant, on or about July 2, 1868, sold nine boxes of sardines and six bottles of hair oil, without the same being duly stamped, whereby the defendant became indebted to the United States in the sum of

$750, or $50 for each of such boxes and bottles. The defendant answering, denies that he sold the articles mentioned without having stamps affixed to them. This action is brought upon the internal revenue act as amended July 13, 1866 (14 Stat. 144). So far as it is concerned, the act substantially provides, that if any person shall make, prepare and sell sardines in cans, or hair oil in bottles, without affixing thereto an adhesive stamp, donating the tax imposed thereon, he shall incur a penalty of fifty dollars for every omission to affix such stamp; and any person who shall offer or expose for sale any sardines in cans or hair oil in bottles, shall be deemed the manufacturer thereof, and be subject to the duties, liabilities and penalties imposed by law in regard to the sale of such article. This law has been deliberately enacted by the representatives of the American people in congress assembled, for the purpose of raising revenue to carry on the government and to enable it to meet its obligations. The penalties imposed by the law for its violation, are intended to secure obedience to it, and prevent the dishonest dealer from escaping his just share of taxation at the expense of the honest one. With the question of the policy or impolicy of this law, neither the court nor jury have anything to do. While engaged as judges and jurors we are not law makers. But you and I are called upon to administer this law fairly and fearlessly, without regard to consequences to third persons, or our personal sympathies or opinions. The law is enacted by the whole people for the whole country, and should be uniformly administered, as to all persons and in all places. As citizens, out of court, it is your privilege by all the means which the lawful freedom of speech and the press allows, to endeavor to procure the repeal of such laws as you think impolitic or unjust; but in the jury-box your only power and duty is to assist within your sphere in the enforcement of the law, as expounded to you by the court. As has been wisely said in the inaugural of the present chief magistrate, the most effectual way to procure the repeal of bad or obnoxious laws, is to rigidly enforce them. The simple inquiry for you to make then, is this: Did the defendant by himself or his clerk sell these articles described in the complaint, without the same being stamped as provided by law? This is the charge against the defendant, which by his answer he denies.

The burden of proof is upon the government to establish the fact stated in the complaint. But this is a civil action. It is therefore not necessary for the government to establish the charge beyond a reasonable doubt, as in a criminal action. You are to weigh the evidence for and against the charge and decide for or against the defendant, according to the preponderance of it. There is no presumption that the defendant violated the law, but the contrary.

Therefore, if no evidence was offered in the case, one way or the other, the defendant would be entitled to a verdict. Starting with this presumption—take this evidence—weigh and consider it, and find a verdict according to what you may conclude to be the preponderance of it.

In canvassing the testimony, you are the exclusive judges of the consideration and effect to be given to it. In exercising this important power you should not act rashly or arbitrarily, but deliberately and according to the dictates of reason and the teachings of experience. Where there are apparent contradictions in the testimony it is your duty to try and reconcile them. If, after reasonable effort, you cannot conscientiously do this, then you must hold fast that which you believe to be probable and true and discard the rest. The law presumes, and you are bound to act upon that presumption, that all men, when they testify in a court of justice under the solemnity of an oath, speak the truth. That presumption of course is not conclusive, but may be overcome in many ways. As men of ordinary experience and observation, you may be satisfied from the manner of a witness—from the intrinsic improbability of his story—from the contradictions of his testimony by other witnesses whom you have reason to believe—or from the insufficient grounds which the witness gives for his belief or statement, that he is wholly or partially unworthy of belief.

The uncontradicted testimony of one credible witness is sufficient proof of any fact in this case. The technical rule requiring two witnesses to prove a fact, as in treason or perjury, has no application in this case.

A box of sardines being unstamped when sold, the legal presumption is that it never was stamped. It is also claimed by the district attorney, that if the stamp is not on the box when sold, the penalty is incurred by the seller, whether it was previously stamped or not. But I do not think the act ought to be so construed. If no stamp be on the box at the time of sale, I repeat, the presumption is, that the article never was stamped. But the party may, nevertheless, prove that it had been duly stamped, and that the stamp had come off or been removed by accident or other cause not involving any intention or design to remove it, by the person having the goods in his possession at the time. If the party makes satisfactory proof of this state of facts, then the prima facie case is overcome, and he ought not to pay the penalty imposed for selling unstamped goods. In fact the tax has been paid, but the best evidence of it, the canceled stamp on the box, has been accidentally lost or destroyed.

The state of public opinion concerning this and similar cases now pending in this court has been alluded to in your hearing. It is not necessary, I hope, for me to say, that you have not been chosen as jurors, to merely reflect by your verdict, the public opinion

upon the subject of imposing penalties upon parties for selling unstamped goods. You have taken an oath to try this case—the question of fact upon which the parties are at issue—upon the law and evidence as given you in court. With the state of public opinion you have nothing to do, nor need or should you stop to inquire upon which side is the loudest and most active clamor. Besides the so-called public opinion which sometimes seeks to intrude itself upon legal controversies, at the bidding or by the procurement of interested parties, is most often ignorant or unjust and always unreliable.

As to the witnesses Quivey and Culpepper, you should consider the money interest they have in this suit. You are not to arbitrarily assume that they are unworthy of belief on this account. But it is a circumstance to be considered by you, and on account of which you are to scrutinize their testimony with care, and act upon it with caution at least. Nor are you to presume that these witnesses are unworthy of credit, because they appear before you as persons giving information to the government against those who violate the laws, for the sake of a share of the penalty. If the defendant was openly selling sardines without being stamped, it was the legal right of any one to walk into his store and purchase them, and then inform upon him, for a share of the penalties. In all this there is no fraud or deceit except upon the part of the person selling the goods. This is what the government claims was all that was done by these witnesses, and so far, there is nothing in their conduct to impeach their characters for truth and veracity. At the same time the position or pursuit is not free from opportunity and temptation to exaggerate and even fabricate for the sake of money or success, or to gratify a grudge. On this account also, you will scan the testimony of these witnesses closely, and act upon it cautiously. As to the contradiction between Culpepper and Robertson, you must determine which of them you will believe. If Culpepper stated to Robertson what the latter says he did, it is a very strong circumstance against the credibility of the former, for two reasons: First, because Culpepper denies it on oath; and second—because if he did tear the stamps off any boxes, it may as well have been those as any others. It may occur to you, that it is not probable that any one in the position of Culpepper, if he had torn stamps off goods for the purpose of having suits brought against parties for penalties, would voluntarily seek out a third person and disclose it to him. On the other hand Robertson testifies, that he was and still is, Culpepper's "bosom friend," and therefore, it may be said he was the latter's confidant, even to that extent. As to the testimony of Brown—he has no actual pecuniary interest in the event of the action. But he is the son of the defendant, and attended to his business when it is claimed that this violation of the law took place. His father has twice the moneyed interest in the action that Q. and C. have together, and under the circumstances, this interest of his father, is as likely to influence him as a witness, as if it were legally his own. Besides as to the fact, whether the articles were stamped or not, at the time they were purchased by Q. and C., his testimony is only his opinion or belief based upon facts prior in date, of which he professes to have a general knowledge. You can judge for yourselves, from the premises, whether the opinion or belief is well or ill-founded, and reasonable or not, and act accordingly.

In conclusion, if you are satisfied from the testimony that the articles were sold in violation of the statute as already expounded to you, you ought to find for the plaintiff, but if you are not so satisfied, you ought to find a verdict for the defendant.

Verdict for the defendant.